*W. J. Cochran* and *C. E. Stone*, for defendants.

---

GREENOUGH *v.* WIGGINGTON AND WIFE.

Where the husband and wife jointly contract for the erection of a building on the land of the wife, a mechanics' lien under the statute may be enforced against the property.

In a proceeding for a mechanics' lien, rules both of law and of equity are authorized.

Law and equity act in concert, so far as general personal engagements of man and woman are concerned.

Generally a debt contracted by a woman during coverture, is *prima facie* evidence to charge her separate estate.

*Error to Des Moines District Court.*

*Opinion by* GREENE, J.   Bill filed by the plaintiff against Wiggington and wife for a mechanics' lien. The bill shows that the defendants, during coverture, made a contract with the plaintiff for the erection of a house upon

a lot in the city of Burlington; that the lot was owned by Ann Wiggington before her marriage and still belonged to her; and that the house was completed according to contract, but that payment had not been made. To this bill the defendants filed a demurrer which was sustained by the court below.

In support of that decision it is now urged that the wife is not bound by any contract made during coverture and that her title to the land cannot be incumbered by a mechanics' lien under such contract. Upon a superficial view this position would appear plausible; for, as a general rule *feme coverts* cannot make valid contracts, which courts of law would enforce against them. But to this rule there are exceptions, even upon common law principles, besides those which are interposed by statute.

This action was commenced under our statute relative to mechanics' liens, and is authorized on all contracts made between the owner of any tract of land, or town lot, or the lessee thereof with the owner's knowledge or consent, on the one part, and any person on the other part, for furnishing labor or materials to erect or repair any house, mill or machinery. The contract as set forth in the bill at bar, was not only made with Ann the separate owner, but also with her husband who could claim no greater right than a lessee, entitled to rents and profits for life, and the building was erected, not only by the consent, but by the direct agency and procurement of both, and for the especial benefit of the wife's separate estate. All who were interested in the lot, participated in the contract by which the value of the land was greatly enhanced at the expense of the plaintiff. In all such cases the statute clearly provides a lien to the party furnishing the labor and materials, without any reference to the sex or condition of the party owning the land.

The husband and wife had the power to sell the real estate by joint conveyance. Stat. of 1846, p. 4, § 4. Nor, would their power to incumber the estate by mortgage be questioned. How then can it be doubted that they had

Greenough *v.* Wiggington and Wife.

power to make contracts by which the land would be held responsible for improvements made upon it?

The right of a married woman to own and possess real estate as of her own property, is expressly acknowledged by statute. Whether she acquire the title before or after coverture, "she shall," in the language of the law, "possess the same in her own right." Laws of 1846, p. 4, § 2. True the control and management, the annual productions, rents and profits, go to the husband as at common law. But all suits affecting the property or possession must be prosecuted or defended in the joint names of the husband and wife. To carry out the spirit of this act it must follow that the title to the land can only be affected by contract with the wife as well as the husband. And although expressly released from all liability to the debts of the husband, it by no means follows that it is released from the debts of the wife when contracted jointly with her husband for the purpose of improving her separate estate.

The statute of this state does not materially enlarge the rights of married women in equity, but it gives them the same powers and privileges at law over her estate, which before could only be asserted in a court of equity. If then this suit should be regarded as a proceeding at law, the principles of equity applicable to a wife's separate property might have a controlling influence in deciding this case. But it is something more than a proceeding at law. The very object, the form, and the result of the action, show it to be assimilated to chancery jurisprudence. The act authorizes the filing of a bill or petition as in chancery, but to secure a more speedy trial, directs the case to be docketed on the common law appearance docket; and that the same rules of evidence shall be observed as in suits at law. At the same time it requires the court to "give judgment according to the justice and equity of the case," and not according to the strict rules of law. The obvious intention of the legislature then, was to give an easy, cheap and sure remedy to that class of communi-

ty for whose benefit the law was passed, by extending to them all the facilities of common law evidence without the delay and expense of taking depositions, and extends at the same time, all the liberal and appropriate rules of equity. In deciding this case then, we are authorized to go beyond the strict rules of law, and appeal to chancery principles in order to arrive at "the justice and equity of the case." Law and equity act in concert so far as *general* personal engagements of married women are concerned. Such contracts cannot affect their separate property. But as a necessary result of the principle that a married woman may take and enjoy property to her separate use, equity enables her to deal with it as a *feme sole*. Such an interest and power, whether recognized in a court of chancery or created by statute, produce, as an incident, the right of disposition or appointment; the power to sell, pledge, or incumber her separate estate. And it is only necessary to have her *intention* to sell, pledge or incumber her estate, indicated in order to give effect to the transaction. A debt contracted by a woman during coverture, either as principal or as surety for her husband, or jointly with him, is generally held to be *prima facie* evidence to charge her separate estate without proof of a positive intention to do so. 2 Story Eq. Jur. § 1400. The equity doctrine seems to be well established in England that such engagements by married women would bind their separate estate. *Hulme* v. *Tenat*, 1 Brown Ch. C. 16; *Sillia* v. *Airey*, 1 Ves. 277; *Balpin* v. *Clark*, 17, ib. 277; 6 Eng. Ch. R. 43; 9 ib. 1. And the American cases which we have examined go to the full extent of the English decisions. *Jacques* v. *The M. E. Church*, 17 John 548; *N. A. Coal Co.* v. *Dyett*, 7 Paige; *Gardener* v. *Gardener*, ib. 112; *Curtis* v. *Engel*, 2 Sand Ch. R. 287.

Viewing this case, as we feel authorized, upon equity principles there can be no doubt that Mrs. Wiggington's separate property should be held responsible for the debt, contracted by herself and husband for the benefit of her estate. It would be rank injustice to suffer a *feme covert*

Greenough *v.* Wiggington and Wife.

to enter into such engagements, secure valuable improvements upon her real estate and then exempt it from liability for those improvements. No decision from a court of justice should ever countenance such a system of fraud. The averments in the bill sufficiently show that the work and materials were obtained upon the credit of her property, that all inured to her individual benefit, that her own undertaking in the premises express an *intention* to charge her separate estate, and that it was upon the faith of such security that the plaintiff performed the work. Upon such a showing we think, the plaintiff's prayer for a lien should have been entertained by the court below, and that the demurrer should have been overruled.

Judgment reversed.

*Grimes & Starr*, and *M. D. Browning*, for plaintiff in error.

*D. Rorer*, for defendants.